Good morning. This is Frank Todrick II, Senior Deputy Attorney General, representing the Appellants and the Nevada Department of Corrections in the state of Nevada. We'd like to aspirationally say five minutes or above. Hey, thank you. Good morning. Good morning. Thank you. So we're here specifically on whether the District Court correctly denied qualified immunity to the MDOC employees on First Amendment claims and only to count one of the underlying complaint. Because this inquiry is purely legal, our standard of review is de novo. We would respectfully ask that this court find that the dependents are entitled to qualified immunity or in the alternative, remand for supplemental pleadings and require that the District Court undertake a particularized analysis of qualified immunity as directed by Casella B. Hughes, White v. Pauley, and its progeny from the Supreme Court. I have a question. I know that you kind of mentioned that this might be moot, but it seemed to me that even if you have a new plan right now, there would still be a time period that we would have to address that would not be covered by mootness. Is there a new eating regime in place now, or is that, was that, you kind of threw that out in passing? There is, and I kind of wanted to update my briefing as to that, because in my opening brief, we had had eight different diets that were available in the Nevada Department of Corrections. And since then, in connection with a settlement for a more scientist practitioner, the institution instituted a fully vegan diet. But is it, excuse me, do you have a vegan or vegetarian kosher diet? No, no, Your Honor. And just in terms of, sorry, I don't mean to interrupt, but just to get back to Judge Callahan's question on mootness, I didn't understand anything to be moot because I didn't see any combination of vegetarian or vegan kosher diet. So do we have a mootness issue here? Not anymore. When this came in, I had asked the old, I had let the old counsel know, Ms. Matt's predecessor, know that there was a new diet. And I was wondering if Mr. Thomas had maybe signed up for that and whether that acceded to his beliefs. I figured no, but I wanted to update the court just in case on the changes to the diet, because that was it. Well, you don't have an option. You don't have an option that satisfies his religious need here. Is that it? Correct. We do not have the vegetarian. This was just a 2019 settlement. So it's more of an update. So I appreciate that. Oh, go ahead. I'm sorry, Judge Christian. Well, I just thank you, Judge Callahan. I just I just struggle with your position here. I'm trying to figure out what your defense really is here. Is it are you are you looking at pronged to qualified immunity? And your and your thought is that they wouldn't have known that they needed to provide this diet or is your contention that you think that he didn't have a sincerely held religious belief in the first place? The primary is that there is that there is no clearly established law that they would know that under these circumstances, denying him would be incorrect. The second point of it is I believe that it's further complicated by the fact that prior to prior to converting to Yahudi Nazarene, that he had previously evinced his intent. I mean, his opinion of not wanting of wanting only a vegetarian meal. So I believe that maybe we could take these one at a time. We could because I think you do kind of signal both of those responses in your briefing. But if you could go to the prong to analysis, how is it possible? What's your best shot that a reasonable person wouldn't know that this is clearly established law, please? Yes, your honor. So while we recognize that there's right to a diet that comports of religious beliefs that was set forth in Shakur and to some extent even prior with coming in. And it seems it seems that we can't really challenge that too much, that it even though I've never really heard of, I don't know how many people fit in to Mr. Thomas's having that conflation of he needs kosher, but he needs vegan. And he says that that's both based on his religion. So it would have to be kosher vegan. So, I mean, have you had requests for that before? No, your honor, and this is a really kind of a unique time frame with Endok because almost simultaneously, I had mentioned that there was a class action suit brought by non-denominational Jewish inmates, Hasidic and Orthodox Jewish inmates as a class action when we were when Endok was converting from kosher to common fare. And as part of that, the NDOC came to an agreement with those classes and a rabbinical council that the common fare should be considered to be, how do I say, kosher compliant. And these three classes of Hebrew inmates agreed. And so they weren't vegan, though, too, right? No, they're just requesting they're just requesting a kosher diet, so kosher diet has its preparation, but it has meat. He's asking for vegan kosher. Yes. What what's out there that would, you know, I mean, we know that. All right. You know, I look to his sites and it looked like the district court was a little bit concerned. I haven't really heard of a kosher person. Ever request saying that it was in the scriptures that they needed to be vegan, too. But it seems to me that that would be challenging whatever his religious values are. And the case law pretty much says you can't really you can't challenge that for those purposes. So what made you think that. That common fare would have satisfied kosher vegan, well, it's kind of a question of how far we draw the line that that Chakor put out it here. You know, so I want to talk about the Chakor case because that is the one that Judge Jones and Judge Baldwin said was was directly on point. Chakor was a a full religious class case from the Arizona Department of Corrections. It was a whole group of Muslim inmates asking to be allowed a halal slash kosher diet, which was permitted to all Jewish inmates at the time. However, the Arizona Department denied it due to costs. So Chakor, under 14th Amendment, said Muslim inmates are also permitted to get this diet, being that it's it already exists. There's already a group of inmates that have it. All right, but wouldn't people be on notice that kosher has meat in it and vegans don't eat meat? So that wouldn't cover that. Well, and I think our question is that we're trying to present is how far does that line that Chakor sends goes? Because if that's your position, I don't see anywhere that you argued undue burden. Is your argument undue burden? That is one of that is one of the arguments, but it's more of a it's not it's it's more of a where is the line been drawn by Chakor? Because we're we're now applying a different constitutional right. We're now asking the president to create a new diet. We're asking this to be for one individual who's practicing a defunct splinter diet. But the problem is the problem is how you argued it, I think, is what Judge Kristen is saying. I'm not sure you make your best arguments. I there could be another argument that he signed that document accepting a certain diet and so that people would have could have reasonably relied on that, even though there was some talk about that, but they wouldn't know that they were violating his right because he accepted it. But you didn't really make that argument and they didn't really make the undue burden argument. I don't think I don't think any of us think that the Department of Corrections should be a cafeteria. All right. And and and as far as that goes, but we've got these cases that say if you have a sincerely held religious belief that you've got to comply with it. And he puts out there, even though and I don't think we can question whether he really thinks the Bible says he has to be vegan or not. I think we would probably have to get to the point vegan and kosher are his sincerely held beliefs. So and if vegan and kosher are not the same as common fair, what why would a reasonable person in that position think that common fair complied? And then you didn't really argue either. You didn't develop the record that much on. Apparently there's an alternative if people he says he can't afford it. But apparently there's an alternative that you can argue, well, you had other ways to supplement that you would be able to do it. But that's not really vetted out in the record either. That's not argued under. I don't think you make the best arguments and we're stuck with the arguments that you make. I would set forth that that the the signature is kind of money to do really money to water. I mean, to some extent it was. How do you say it? The meeting of the mind, if this was a contract, would have been him signing the contract. Did you argue the fact that he signed that document and accepted it or tried to make that? Did you argue that a reasonable official would have thought that they were complying? Did you argue that based on that? No, I wanted to I wanted to stick away from the question of fact issues because I. I thought that I got it got too murky and they did and the law report didn't even argue the turnover sadly factors all the way through. So when you when one has the record one gets, I thought the furthest I could go was qualified immunity, saying that there's no way that the drafters that core meant for this case to go that far that to individualize the dietary request so much. And while I while there's two or three things that I would I really, really wish were brought up the first time below. That's why I felt to some extent the hands were tied on really, really, really getting into the factual arguments there because they the qualified immunity literally said nothing about the form documents. Do you want to do you want to reserve your time and then we'll come back after that. Miss Math focuses her argument. You want to reserve the balance. I'd be happy to. Thank you. Thank you very much. All right. Miss Math. May it please the court, Madeline Math for plaintiff at Pele, Mr. David Thomas, the discussion with my opposing counsel about whether a vegetarian kosher diet exists and whether Mr. Thomas has a sincerely held religious belief requiring that he vegetarian underscores why the court lacks jurisdiction over this appeal. And that's where I'd like to begin under Johnson versus Jones. This court cannot resolve whether Mr. Thomas's requests for a vegetarian kosher diet were based solely on sincerely held religious beliefs or some hybrid of religious beliefs and I think that's probably your best argument. But I'm just going to say that. I'm not speaking for other people, but we we on a regular basis review interlocutory appeals on qualified immunity because going to trial and resolving those factual issues and you give some then you say, oh, you are entitled to qualified immunity. The purpose of qualified immunity is to not go to trial. So that's true. That's certainly true, Your Honor. When the defendants have framed their appeal around a purely legal question. But here the defendants failed to concede the facts in Thomas's favor, even though their qualified immunity defense depends entirely on this factual dispute over whether reasonable officers would have known that Mr. Thomas had a sincerely held religious belief requiring him to eat vegetarian. And so under Johnson, Your Honor, the court routinely applies applies Johnson in situations like the one we have here where there is a fact based denial of qualified immunity and the defendants have failed to pose a purely legal question. So, for example, in our briefs, we cite to George Pellegrino and Foster, this court's decision in those cases where the court applied Johnson to dismiss for lack of at least three occasion in occasions in unpublished decisions. And I'm happy to provide those citations, but I mentioned them not because there's anything new or novel in those unpublished cases, but simply because it shows how routine it is to apply Johnson. And to your point, Your Honor, about the concerns about judicial efficiency, Johnson. Yeah, I'm more interested in drawing lines here on terms of if there's one person in the whole United States that wants a vegan kosher diet, where do we you know, I don't I don't think that the Department of Corrections is, you know, sadly, it's not meant to be a cafeteria. You know, people don't have the same rights, but they do have certain rights of their religiously held views. So if he's the only person in the whole United States that's requested a vegan kosher diet, what if you go to the second prong of qualified immunity, why would they be on notice that they're not that it's that why is it clearly established that they have to provide that? For your honor, well, first, it's a disputed fact whether Thomas is the only one making this request at ER 393 and 394. Thomas has an affidavit where he discusses a meeting where he and others were promised the vegetarian kosher diet. So so that question of whether the diet was individualized, the request was individualized to Thomas is in dispute. And if the courts to assume jurisdiction, it would need to view the facts and inferences in Thomas's favor. And in any case, this court's decision in Shakur shows that even when a request for a was requesting a halal diet that included halal meat, he had access to a halal vegetarian diet, but it upset his stomach. And so even though that was a idiosyncratic request by the plaintiff there, the court still held that the defendants were not entitled to summary judgment on his free exercise claim. And and also the this court has recognized and the Supreme Court has recognized that it's not within the judicial ken to question the centrality of a particular plaintiff's beliefs. So we have from the Supreme Court's decision in Thomas versus review board, which is site. Is she freezing to you? OK, we have a little judicial perception. Of the particular belief or practice in question, religious beliefs need not be acceptable, logical, consistent or comprehensible to others in order to merit First Amendment protection and counsel on my end, I lost about a minute of your audio. I could not hear you. Could you back up and repeat? I don't want to miss your argument. Sure, sure. I'm so sorry about that. Please let me know if if I drop out again, are you are you able to hear me? OK, I'm talking about. Sure, so so I think I was just discussing with Judge Callahan that it's not within the judicial ken to consider the centrality of a particular plaintiff's belief to the religion. And then I was quoting from the Supreme Court's Thomas versus review board, which says that resolution of a free exercise issue does not depend on, quote, a judicial perception of a particular belief or or practice. Religious beliefs need not be acceptable, logical, consistent or comprehensible to others in order to merit First Amendment protection. And we also talked about how in any case here it's a disputed fact whether the request for vegetarian kosher diet, whether that is central to Thomas's religion. And that's because he practices a scripture based form of Judaism where he follows scripture, where scripture and rabbinical teachings conflict. And that's at one ninety five. I'll grant you that at summary, Judge Callahan's right. We do a lot of qualified immunity cases and we construe the disputed facts, as you know, in the light most favorable. So I think at this juncture, we're accepting that this is a sincerely held religious belief. So I think that the interesting question that Judge Callahan is poking at and that I'd like you to address is if this were established, I don't think we have that on this record. But if it were an entirely idiosyncratic request without trying to figure out whether it's unduly burdensome, would the state of Nevada have a would the know we had to accommodate a something that is we're not questioning the sincerity of it, but something that's really entirely idiosyncratic? Would they be on notice of that? As your honor, they would be on notice of that under this court's decision in Shakur, because, again, the plaintiff there was requesting a halal diet that included meat, even though he had access to a halal vegetarian diet. And that was because the halal vegetarian diet upset his stomach, interfering with his his ability to pray. He had an idiosyncratic reaction, in other words, and that's the case you rely on. And my only other I want to get out of Judge Gilman's way. My only other question is, has other has the Supreme Court ever said that? Your honor, I'm not sure that there's a there's a Supreme Court case that I can point you about how idiosyncratic a religious belief might be, except what I was quoting to you from Thomas versus review board and the Supreme Court's decision in Hernandez that says it's not within that the court won't question the centrality of a belief. But this court has held in other cases besides Shakur that where a diet is religiously beliefs and a prison denies that diet, what the prison officials are doing are asking that the inmate go hungry or defile themselves by doing something completely forbidden. Counsel, you've answered my question. I'm familiar with our case law. I was asking about the Supreme Court. So I'm going to stop you there so that Judge Gilman has a chance. Please. Sure, your honor. Thank you. Let me ask you this about Shakur. You know, if in Shakur, it was just a matter of switching from one established diet to another established diet. He wanted to go from halal to kosher. Here you're talking about your client wanting a new diet that doesn't exist. Does that make a difference in terms of whether clearly established prong has been met or not? Or is Shakur? Sure, your honor. For that issue, this court has its its decision in Ashelman. In that case, the plaintiff was asking for a diet that did not exist, a kosher diet. In that case, he was only able to access a kosher meal, one meal a day. And he was asking for three meals a day of kosher. And so the diet did not exist that he was asking for. But I'd also suggest that in Shakur, the diet actually did not exist as well because the plaintiff there was requesting a halal diet that included halal meat. And the kosher diet that existed was a easy, obvious alternative under factor four of the US. And the same is true here, because although perhaps Mr. Thomas would would like a entirely new vegetarian kosher diet with three different meals a day, instead, he's willing to to settle for simple substitutions to the existing common fair diet. And that's at E.R. 85, where he talks about requesting peanut butter and jelly sandwiches and rice and beans as simple substitutions for days when the common fair diet includes meat. And that makes his situation very similar to the plaintiff in Ashelman, who was requesting the kosher diet. And the defendants there had conceded that there were simple substitutions that could be made using existing food within the prison walls, such as whole fruits, whole vegetable, vegetables, nuts, cereal to create the diet for them. But they have to be kosher, though, too. I mean, it can't just you have to I don't know what you I don't know how you make kosher vegetables. I don't know how you make kosher peanut butter and jelly, but it's still got to be kosher, right? That's right, Your Honor, it would be prepared in the common fair kitchen, which is what would make it kosher. But in any case, we'd be viewing the facts here in Thomas's favor. Well, let me ask you, let me ask you this. All right. You, RLUIPA is a statute that gives prisoners certain rights, right? But when we look at qualified immunity to establish the rights, RLUIPA is not a constitutional right, right? If we're doing that, if we're doing the 1983 qualified immunity. So how does RLUIPA dovetail into the 1983 analysis of the established right? Because it's separate, right? What sure. Yes. RLUIPA does provide heightened protections beyond what's provided by the First Amendment free exercise clause. But as I think my opposing counsel mentioned on appeal is only the qualified immunity defense to count one, which is Mr. Thomas's free exercise claims. OK, so so that's separate, a separate federal claim as far as that goes. It does any way the fact that RLUIPA exists, does that in any way factor into what's clearly established? There's certainly overlap between the cases that discuss the free exercise claims and RLUIPA claims. But but here, what is distinct about the free exercise claim and the RLUIPA claim has to do with under the free exercise claim, officers need to provide a legitimate penological interest and evidence that supports that penological interest under the Turner test, which, of course, defendants here did not present below and did not even mention Turner here to this court. Under RLUIPA, it's a higher standard. They would need to provide a compelling interest and show that it was furthered by the least restrictive means. And under either test, defendants here have not present, did not present any evidence below about a legitimate penological interest or compelling reason for denying Thomas's request. Let me ask you this on that Thomas's agreement to participate in common fair. If if we assume hypothetically that it was not conditional or at least that the defendants reasonably believe that Thomas had unconditionally agreed to participate in the program, would we then be compelled to find under the second prong that the defendants would be entitled to qualified immunity? Your Honor, under that hypothetical, we would have an entirely different case and perhaps defendants would or perhaps reasonable officers would not be on notice then that that Mr. Thomas was entitled to his religiously required diet. Although I think there's still significant evidence in the record suggesting that his requests are based on sincerely held religious beliefs, even if you take away the saying he is only accepting the common fair diet, assuming that is, quote, meat free kosher or assuming it's, quote, vegetarian. But we would still have the evidence from, for example, his religious diet. It's handwritten, right? It's handwritten. He signs he'll take common fair, but then he handwrites some stuff on there. Right. Is that that's that's right. Your Honor, he handwrites it. But if the courts to assume jurisdiction, it would be the facts in his favor, including that fact. And in in any case, we have his religious diet and faith declaration form saying vegetarian kosher is his religiously required diet. I see that my time is up, so if there are no further questions, let me find out, do either of my colleagues want to ask Ms. Methany additional questions? I can. I am OK. Apparently not. Thank you for your argument. And once again, thank you for your pro bono representation, Mr. Is it is it Todrick? OK. All right. You have three, three and a half minutes for rebuttal. You need to you're not muted, you're you are muted or whatever. All right. Thank you. It was a great argument, but we didn't hear a word of it. So I was coming out firing. Thank you, Your Honor, for the reminder and thank you to the clinic for coming on. It's been actually really great to work with them. But I would say if we take this opposition brief at an extremely literal view and should core its base value, then the logical conclusion is that an inmate can make up any dietary need as sincerely held. And the president needs to try to accommodate. We are simply asking we're recognizing that we didn't have the turn of his applications or we're simply asking where do we draw the line between a personal preference and what is actually a First Amendment burden without being I would say that in Nevada law 2012, 2013, it wasn't yet clearly established that they would be on notice that they're abiding law, especially in lieu of the form he signed, the form request and then his own words in the Mr. Thomas said, while I'm in an institution where meat is not freshly killed, for sure, I'll always be vegetarian. I quit eating meat because all the institutions are with meat with blood. My belief there has never changed. So they're working with this new case law. This this appellate or this appellee who's telling them in his own words is this case for proteins at prisons that you would never eat meat here anyway. So we're saying we have to draw a line on this individualism and these religious needs. We understand the tension and religious accommodations and very much take the obligation seriously. But we'd also set forth the qualified immunity applies because of the lack of case law. Our looper was still relatively new. Shakur was still relatively new. There literally wasn't a case in any circuit except possibly Patel versus U.S. Board of Prisons from Arkansas in 2012 that talked about a halal vegetarian diet. And that would that would have found favorably for Thomas, but I don't even think that that fact pattern necessarily applies. So I ask, how can we say it's clear notice in Nevada law 2012 to 2013 that when common fair was still a new concept, that this was in violation of his constitutional rights, especially with the form, especially with his own words. So it's kind of though when they say generality, let's just say maybe there's not a case where say it's an excessive force case. Maybe there's not a case that says, you know, choking someone to death is excessive force under certain circumstances. But there's also a common sense, you know, that you don't have to cover in the cases every single one. And so the common sense here is that vegan kosher is not the same as common fair. Anyone if anyone that I guess the people that are doing that could know that. That's common sense. It's not the same. So why does there have to be a case that says vegan kosher is you have to accommodate? Well, I understand I very much understand the need for exceptionally particularized analysis and say there was excessive force cases. And while it's not as in-depth here, I would also set forth that if we consider this, that this report said Shakur was literally directly on point. If we're saying that Shakur is directly on point, we have to consider the penumbras of that decision. In that decision, it was about a class getting an existing diet. Could that could those drafters have actually believed that this case, which get an existing diet that was denied because of costs, could those drafters have actually meant that this individual should be able to get a kosher vegetarian diet this many years later? And that's where we're just asking for the line to be drawn as an attorney general where we're general counsel for the departments of prison. And these qualified immunity arguments help us draw the line and advise on policy. And that's why these decisions are so important to set the lines as to how far Shakur goes, how far a prison should accommodate, and what is actually his First Amendment violation here. Okay. Do either of my colleagues have any additional questions? You've gone a little over your time. No, I don't. Thank you. Okay. So that would conclude arguments. Thank you both for your arguments in this matter. This will stand submitted. Thank you.
judges: Gilman, Callahan, Christen